## HUNTLEY v. EMPIRE ENGINEERING CORPORATION.

(District Court, W. D. New York. July 19, 1911.)

1. CANALS (§ 30*)—OBSTRUCTION—INJURY TO VESSEL.

Evidence considered, and *held* to show that the sinking of a loaded canal boat while being pushed by libelant's steam canal boat in the center of the Erie Canal, which was the usual place, by striking a stone in the bottom, was due to the negligence of respondent which in working at the place with a dredge had raised or turned the stone, which was embedded in the bottom of the canal, so as to render it a dangerous obstruction to navigation.

[Ed. Note.—For other cases, see Canals, Dec. Dig. § 30.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. CANALS (§ 29\*)—CONTRACT WITH STATE FOR IMPROVEMENT—INJURY TO VESSELS—LIABILITY OF CONTRACTOR FOR NEGLIGENCE.**

Under a contract with the state for deepening and widening the Erie Canal, which provided that the work should be done "so as not to interfere with the navigation of the present canal," and that all damages of whatever nature resulting from the work during its progress should be borne by the contractor, it was liable for an injury to a canal boat being navigated in the usual manner from striking an obstruction negligently caused by the contractor in doing the work.

[Ed. Note.—For other cases, see Canals, Cent. Dig. §§ 36–39; Dec. Dig. § 29.\*]

In Admiralty. Suit by Loren E. Huntley, individually and as trustee and bailee, etc., against the Empire Engineering Corporation. Decree for libelant.

Brown, Ely & Richards, for libelant.
Dana L. Spring, for defendant.

HAZEL, District Judge. On the night of October 28, 1909, four canal boats, the Captain L. E. Huntley, the John Valiant, the Ella May Hamilton, and the Osborne D. Fisk, together with the steam canal boat Paragon, all loaded with grain, were on their way eastward in the Erie Canal from Buffalo, and, while moving slowly in the middle of the canal about one mile west of Spencerport, the Huntley, which was being pushed ahead by the Paragon, struck a submerged rock or boulder, and sunk to the bottom of the canal. The Paragon struck the rock a glancing blow, and sheered off, while the Valiant, which was behind the Paragon and towed by her, struck the rock and stranded.

[1] In support of the libel evidence was given that the damages were sustained by reason of the negligent acts of the defendant Empire Engineering Corporation, which at the time of the accident was engaged in widening and deepening the Erie Canal under its contract with the state of New York, in that it partially rolled over, lifted, or raised the rock with its steam dredge and shovel, and left it unguarded or unmarked. It was shown that the dimensions of the canal boats which struck the rock and their drafts were as follows: The Huntley 97 feet long, 17 feet 6 inches wide, 10 feet 6 inches in depth, and she drew 5 feet 11 inches of water. The Paragon and the Valiant were of the same size, and drew 6 feet and 5 feet 10½ inches, respectively. The Huntley was well fastened to the Paragon, and carried a bow light which illuminated the bank for quite a distance ahead. The same rudder steered the Huntley and Paragon, while the other canal boats followed in the wake of the towboat, and were made fast on a 500-foot line. At the point of collision the canal runs nearly east and west for about three-quarters of a mile. The master of the Paragon, seeing the lights ahead of the defendant's dredge and of a passing canal boat, reduced speed, going ahead slowly, and, as the Huntley proceeded under bridge No. 101, she suddenly struck a hard object in her path—she struck several times. The Paragon promptly stopped her engine, and, as the Huntley

cleared the obstruction, she broke a coupling rod, and veered out to the north side of the canal, and sank, while the Paragon glanced off, and the Valiant stranded on the rock in the center of the canal.

The submerged rock was from 12 to 18 inches higher than the canal bottom, and it was estimated by the diver and by other witnesses that it measured across its top from 2 to 4 feet. There was 5 feet 7 inches of water over the rock on the night of the accident, while the normal depth of the water in the center of the canal was 7 to 7½ feet. The legal draft of vessels navigating the canal is not more than 6 feet. The defendant was engaged in dredging the canal level near the point of accident, using in its work a so-called digger dredge, having 75 horse power and 51 steel buckets, each bucket measuring 2½ to 3 feet in width and 2 feet in depth with a capacity of ⅕ of a yard. At their digging edges the buckets have teeth which are five or six inches in length.

The libelant contends that the defendant on or about October 23, 1909, raised or shoved the rock out of its position, and then, without making an inspection or taking soundings, negligently left the work incompleted, and went eastward of the bridge No. 101. There is no direct evidence to show that the defendant dredged or dug in such a way as to disturb the rock or to raise it out of the bed of the canal, and, to hold that the defendant was negligent in the performance of its work so as to interfere with navigation, it is necessary to have recourse to the actual situation, the surrounding circumstances, and the probabilities. Concededly the defendant operated its dredge on the canal level close to the place where the Huntley struck and about 25 to 30 feet west of bridge No. 101, and passed through the bridge on October 24th. During the time the work on the west side of the bridge progressed canal boats drawn by horse or mule were towed under the bridge by the defendant, such towing being close to the bank and not in the middle of the canal, and hence they were not subject to the risk of striking the stone. The proofs show that the steam canal boat William Hengerer, going east, struck an obstruction in the center of the canal between the 24th and 28th days of October, and on the 27th day of October a west-bound canal boat drawing five feet eight inches of water also struck the rock, and glanced off and cleared it. Steam canal boats loaded to the permissible depth usually navigated in the center of the canal, and the evidence shows that such boats have passed and repassed in the middle of the canal for many years without striking the obstruction in question.

One witness for the defendant, however, testified that on an occasion, when a packet was passing his canal boat, he came in contact with an obstruction in the center of the canal which he believed was a rock, and which caused his boat to sheer toward the berm bank. On cross-examination he testified that at various times and seasons of navigation he struck a stone while navigating in the center of the canal at a point where the accident occurred, but without his boat sustaining any injury. Aside from such testimony, the witness Baird testified that he has known of the rock in question projecting in pre-

vious years above the ice that formed on the canal to such height as to enable skaters to sit down to fasten their skates. There was also testimony by said witness to the effect that the submerged rock about 30 years ago projected out of the bed of the canal to such height that it was lowered or further imbedded in the soil by the canal authorities, and he testified that he thought that the rock in subsequent years worked up and out of its foundation. From such testimony the inference is drawn by the defendant that the submerged obstruction existed in the bed of the canal for many years prior to the accident, and that from natural forces it gradually worked upward out of the soil. Such inference, however, is not thought probable. While I am prepared to believe that the witness Fitzgerald in navigating the canal boat of which he was master struck an obstruction in September, 1909, before any work was done by the defendant on the canal level, yet such impact is explained by the fact that a packet passed at the time, which doubtless caused such a displacement of the water as to result in the canal boat striking the stone. His assertion that at other times he came in contact with an obstruction near the bridge loses its probative force in the absence of any showing as to the depth of the canal level at such times and the draft of his canal boat. The proofs show that the rock had been imbedded in the center of the canal about 30 or 35 feet west of the bridge for many years prior to the accident, but at its top it was not more than 2 inches approximately from the bottom of the canal. In this condition it was not a menace to navigation. The presence of a slight ridge in the canal, as shown by libelant's evidence, close to the stone, indicates the proximity of the dredge in its operations, and persuasively points to the conclusion that the dredge either came in contact with the stone and appreciably lifted it out of its foundation, or that in its operation it congested the soil near the rock, and forced it upward in the canal, so that it became an obstruction and interference with proper navigation. There was also evidence to show that the defendant had knowledge on the day of the accident of the obstruction in the canal. The canal boat Hengerer on or about October 25th, after she had struck the rock as above stated, was pulled off by the dredge which had fastened a line to her; and the witness Costello, master of the steam canal boat New York Recorder, testified that shortly after his boat struck, which was about 25 feet west of the bridge, he met the tug Seneca, owned and operated by the defendant, and which was engaged in towing horse canal boats under the bridge, and was advised by her master to navigate close to the towpath, as there was a rock in the canal. There was other evidence to support the presumption that the rock had been raised or turned upward by the dredge in its operations, and there was testimony by the defendant to negative such presumption. I think, however, that the evidence by a fair preponderance points to the conclusion that the defendant did not exercise proper diligence and care to protect steam canal boats from coming in contact with rock or stone raised by it in the dredging operations near bridge 101 and as a result of which libelant sustained injury.

[2] The defendant contends that it cannot be held liable, even

though the facts indicate a failure on its part to take soundings or make inspection of its work or to guard or protect canal boats from obstruction or interference on the ground that its contract with the state does not contemplate any liability for injuries such as 'specified in the libel. The material part of the contract, clauses 17 and 23, substantially provide that the work shall be conducted "so as not to interfere with the navigation of the present canal and the safety of such banks and structures as may be required for that purpose, between the fifteenth day of May and the fifteenth day of November of each year, during the progress of the work"; and, further, "that all damages of whatever nature resulting from the work during its progress, from whatever cause, shall be borne and sustained by the contractor." A reasonable interpretation of the terms of the contract obligates the defendant to perform the work of widening and deepening the canal without hindering or interfering with the reasonably safe navigation of the canal. It certainly was not merely the intention of the state and the contractor that navigation should not be interrupted or stopped during the continuance of the work. To leave in the bed of the canal a submerged obstruction without warning to navigators, or without safeguarding canal boats plying the canal in either direction, was an interference with navigation such as rendered the defendant responsible for injuries sustained through its negligence. It manifestly was the intention to require the contractor to keep the canal at the place where the work was done in proper condition and repair while the work of widening and deepening was in progress. To perform the work in such a way as to precipitate or raise an obstruction which interfered with proper navigation, and without doing anything to avoid the danger from such an obstruction, was such an act of negligence as to render the defendant liable for injuries sustained. It cannot be assumed that the state after taking the precaution to obligate the contractor not to interfere with boats having the right to navigate the canal would wish to relieve such contractor from responsibility if by its negligence and want of precaution injury was sustained by a vessel rightfully on the highway. While it is true that the state is not liable to the libelant, there being no remedy provided by law (Locke v. State, 140 N. Y. 480, 35 N. E. 1076; Coster v. Mayor of Albany, 43 N. Y. 399), yet the decisions of the Court of Appeals of the state of New York, which has often considered the question of the liability of a contractor engaged in repairing the Erie Canal to persons sustaining injury through the negligence of the contractor, uniformly hold that the Erie Canal is a public highway and that an action will lie against a contractor employed by the state to maintain in proper condition that portion of the canal which is undergoing repairs. Robinson v. Chamberlain, 34 N. Y. 389, 90 Am. Dec. 713; Fulton Fire Insurance Co. v. Baldwin, 37 N. Y. 648; Hicks v. Dorn, 42 N. Y. 47; Johnson v. Belden, 47 N. Y. 130; Little v. Banks, 85 N. Y. 258. These cases I think enunciate the principle upon which the liability of the defendant is maintainable.

Counsel for defendant directs attention to a line of cases which

apparently hold that, where a contract is made for the benefit of a third party, the latter cannot sue the promisor, and such cases are applied by him to the present case upon the theory that the improvements in the canal were for the benefit of the libelant and navigators of the canal generally, and also upon the theory that the contract under which the improvement progressed does not include some legal responsibility upon the state. But I think the principle of such cases is not applicable, and that the question of liability of the defendant is controlled by the rule that, as it assumed under its contract with the state for a consideration to improve the canal without interfering with its navigation and thus confer a benefit upon the libelant, it must be held liable for preventing the libelant from enjoying such benefits and for its negligence by which the injury was sustained. In the performance of its work the defendant was bound to exercise ordinary care, and upon ceasing its dredging operations in the canal it should have made an inspection, such as proper soundings, which would doubtless ·have disclosed the character of the excavation and the elevation of the stone above its normal height. ·

A decree may be entered in favor of the libelant with a reference to the clerk to ascertain and compute the damages sustained, with costs.