HUNTLEY v. EMPIRE ENGINEERING CORPORATION.

(Circuit Court of Appeals, Second Circuit.   February 10, 1914.)

No. 86

1. CANALS (§ 18*)—CONSTRUCTION—LIABILITY FOR INJURIES.

A party contracting with the state to widen and deepen a section of a canal was liable for any damage resulting to a party using the canal from its negligence in performing its contract.

[Ed. Note.—For other cases, see Canals, Cent. Dig. §§ 20–24; Dec. Dig. § 18.*]

2. CANALS (§ 18*)—ACTIONS FOR INJURIES—BURDEN OF PROOF.

Where the rock upon which a canal boat struck must have been raised while a contractor with the state was in possession and charge of the bottom of the canal, for the purpose of widening and deepening it, the burden was on it to explain how the rock became displaced, which burden was not met by showing that the buckets on its ladder dredge did not raise the rock by direct contact.

[Ed. Note.—For other cases, see Canals, Cent. Dig. §§ 20–24; Dec. Dig. § 18.*]

Appeal from the District Court of the United States for the Western District of New York.

Libel by Loren E. Huntley, individually and as trustee, against the Empire Engineering Corporation. From a decree for the libelant (189 Fed. 516), the respondent appeals. Affirmed.

D. L. Spring, of Buffalo, N. Y., for appellant.

Brown, Ely & Richards, of Buffalo, N. Y. (J. B. Richards, of Buffalo, N. Y., of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge.   The respondent contracted with the state of New York to perform a part of the improvement of the Erie Canal, the work to be conducted so as not to interfere with navigation.   It was to widen and deepen one section while the state continued to operate the canal as usual.   The original depth of 7 to 7½ feet of water was to be increased from 10 to 10½ feet.   October 24, 1909, the contractor, having excavated by means of a ladder dredge to a point within 35 to 40 feet west of Bridge No. 101, discontinued there and moved the dredge to a point about 150 feet east of the bridge. October 28th at 1:15 a. m. the steam canal boat Paragon, pushing the canal boat L. E. Huntley ahead and towing the canal boats Valiant, John D. Fish, and Ella M. Hamilton astern on a hawser about 500 feet long, approached the bridge in the center of the canal.   The boats were grain laden and drew 6 feet of water or less; 6 feet being the maximum draft allowed by law.   When close to the bridge, the L. E. Huntley struck something sustaining injuries which caused her to sink at a point a little east of the bridge.   The Paragon also struck, but cleared, while the Valiant fetched up and remained fast.   The libelant, as owner of the boats and bailee of the cargoes, filed this libel to recover damages of the respondent on the ground that in excavat-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ing it had thrown up a large rock on the bottom and negligently left it unbuoyed and unmarked. Judge Hazel directed a decree for the libelant, from which the respondent appeals.

The canal is open for navigation from May 15th to November 15th in every year and is used by many boats drawing 6 feet of water; canal boats, especially steam canal boats, generally towing in the center of the canal. At the close of the season, the water is run out through culverts and spillways, so that the bottom is bare. The rock was well known to some of the witnesses and was examined when the water was run off shortly after the accident.

[1] The law is quite clear that the respondent is responsible for any damage resulting from its negligence in performing its contract with the state. St. Peter v. Denison, 58 N. Y. 416, 424, 17 Am. Rep. 258; Dunn v. Empire Engineering Corporation, 147 App. Div. 237, 131 N. Y. Supp. 935; Harrison v. Hughes, 125 Fed. 860, 60 C. C. A. 442. The libel proceeds upon this theory, and not upon the ground that the contract with the state was made for the libelant's benefit, and that he could avail himself of its provisions.

[2] Therefore the single question is: Did the respondent displace the rock so as to reduce the depth of water in the canal? It is proved that this rock had been upon the bottom for many years and did not protrude more than a few inches; also, that at the time of the accident it protruded from 12 to 18 inches. It was what is called a hardhead, described as being a round or oval boulder three or four feet in diameter. That this change in its position must have happened shortly before the accident is shown by the fact that no boat had ever touched it before the dredge moved to the other side of the bridge October 24th, and that two steam canal boats which passed between that date and October 28th, when this accident occurred, did touch it.

The dredge is a large rectangular boat having what is called a ladder extending in front which can be moved up and down, but in no other way. When in operation, the outer end of the ladder rests on the bottom. An endless belt runs around its length, carrying 51 steel or iron buckets some 2½ feet wide by 18 inches deep. When the belt is set in motion, the buckets move at the rate of 25 to 27 a minute from the upper end of the ladder toward the water and gradually turn upside down. Their weight makes the belt sag down to the bottom, and they begin to bite in about 10 feet from the lower end of the ladder. From that point they move forward and upward, getting gradually straighter until they are carried in a vertical position full of whatever they have dug around a cylinder called a tumbler and then up the upper side of the ladder to a hopper at the upper end where they empty their contents and return via the underside to the bottom. The dredge is placed in the center of the canal fixed by a single spud in the bottom astern, and, by the movement of the bow by fasts on shore controlled by winches on the dredge, the ladder is enabled to work from one side of the canal to the other transversely in the arc of a circle. There was absolutely no indication that the boulder had been displaced after the water was run out of the canal. The dredge had evidently worked nearly up to it. If the buckets had

struck and rolled it over as they rose from the water to go up the ladder, they would also have displaced the earth around it; but this was not the case. Nor was there any evidence of stoppage in the work of the dredge. or of injury to any of the buckets which would certainly have been the result of contact with so large a rock.

The respondent was, so to speak, in possession and charge of the bottom of the canal where it was working. This necessarily follows from what it had contracted to do. The District Judge found, and we think on sufficient evidence, that the rock must have been raised during the time the respondent was at work. There is no conceivable cause for it excepting the work. Under these circumstances, we think the burden of explanation was upon the respondent. If it had offered no explanation at all, we think it would properly have been held liable. The explanation it does give goes only to show that the buckets did not raise the rock by direct contact. While we are not convinced that the buckets actually contacted with and moved the rock, their operation on the bottom may have caused the change indirectly. Under the peculiar circumstances of the case, we think the respondent has not met the burden of explanation, and we come to this conclusion less reluctantly because the touching of the rock by two other steam canalboats between October 24th and 28th should have put it on inquiry whether something was not radically wrong at the point where its dredge had been working.

Decree affirmed, with interest and costs.