OTTS v. I. M. LUDINGTON'S SONS, Inc., et al.

I. M. LUDINGTON'S SONS, Inc., et al. v. THE CUMBERLAND.

(Circuit Court of Appeals, Second Circuit. December 14, 1915.)

Nos. 33, 159.

1. CANALS &⇒18—OBSTRUCTION BY CONTRACTOR—LIABILITY FOR INJURY TO BOATS.

A contractor engaged in work on the Erie Canal is liable for an injury to a boat using the canal, resulting from the negligent manner in which his work was performed.

[Ed. Note.—For other cases, see Canals, Cent. Dig. §§ 20–24; Dec. Dig. &⇒18.]

2. CANALS &⇒18—OBSTRUCTION BY CONTRACTOR—LIABILITY FOR INJURY TO BOATS.

A decree affirmed, holding contractors engaged in widening and deepening the Erie Canal into a barge canal liable in part for injury to two canal boats and their cargoes by stranding, and also holding the boats in fault; the evidence tending to establish that a number of large stones were thrown out by a dipper dredge in use by the contractors and left by them on the bottom of the old canal, which was in use, and that it was upon one of such stones that the boats struck, but that, if they had been carefully navigated, the injury might have been avoided.

[Ed. Note.—For other cases, see Canals, Cent. Dig. §§ 20–24; Dec. Dig. &⇒18.]

Appeals from the District Court of the United States for the Western District of New York.

Suit in admiralty by Joseph W. Otts, individually and as trustee and bailee of the cargo late laden on the canal boat Cumberland, against I. M. Ludington's Sons, Incorporated, and George W. Beeman, in which the Mannheim Insurance Company intervened, with cross-libel against the canal boats Cumberland, Columbia, Syracuse, and Oswego, in which Lena Beadle, mortgagee, intervened; also suit by Charles Nicholson, individually and as trustee and bailee of the cargo late laden on the canal boat C. E. Collard, against the same respondents, in which the Mosely & Motley Milling Company intervened, with cross-libel against the C. E. Collard. Cross-appeals from a decree dividing damages resulting from the stranding of the boats Cumberland and C. E. Collard in the Erie Canal, these cross-appeals are taken. Affirmed.

For opinion below, see 229 Fed. 454.

On cross-appeals from a decree adjudging I. M. Ludington's Sons, Incorporated, and George W. Beeman, on the one part, and the canal boats Cumberland and Columbia on the other, in fault for the sinking of the Cumberland in the Erie Canal near Holley, N. Y. The second of the above-entitled actions relates to the stranding of the canal boat Collard at the same bend in the Erie Canal.

The court found that the injuries sustained by the Cumberland were due to the negligence of the libelants, I. M. Ludington's Sons Company, which had a contract with the state of New York for widening and deepening the Erie Canal and transforming it into the so-called Barge Canal, and were due also to the negligence of George W. Beeman, who had a similar contract. The court also found the Ludington Company, Beeman, and the Cumberland, liable for the injuries sustained by the latter. Beeman has not appealed.

Lewis, McKay, McMillan & Bown, of Rochester, N. Y., for appellant I. M. Ludington's Sons, Incorporated.

Thomas C. Burke, of Buffalo, N. Y., for appellant Otts.

John B. Richards, of Buffalo, N. Y. (Brown, Ely & Richards, of Buffalo, N. Y., of counsel), for appellee Mannheim Ins. Co.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

COXE, Circuit Judge. [1] These appeals and cross-appeals bring here for review a final decree which holds in fault Ludington & Sons and George W. Beeman for the disaster which befell the canal boats Collard and Cumberland. The canal boats were also held in fault. Ludington's Sons and Beeman were held jointly liable with the libelants and therefore the damages and costs were equally divided between the wrongdoers. In the case of the Cumberland the respondents were directed to pay jointly one half and the tow, jointly, the other half. In the case of the Collard the respondents I. M. Ludington's Sons and George W. Beeman, on the one part, and the Collard, on the other part, were held in fault for the disaster and the consequent damages to the Collard and her cargo and the incidental damages arising therefrom. The injuries sustained by the boats and cargoes in question

were due as the pleadings allege, and as the judge finds, to the boats striking obstacles in the bed of the Erie Canal at a bend between bridges 115 and 116. It is alleged by the libelant in each of these cases that the obstructions were caused by the use of a dipper dredge which is a powerful machine capable of loosening and bringing to the surface large boulders which if not lifted out by the dipper will be left under water in the channel of the canal so that they become a menace to navigation. Beeman was employed as a subcontractor by Ludington and it was he who operated the dredge which loosened the stones which were thrown into the channel of the old Erie Canal thus, to quote the language of the District Judge, "decreasing the navigable depth of the water so that it became and was insufficient for canal boats drawing six feet or more of water."

There is no doubt that there were dangerous obstructions in the canal bed. The photographs show several large stones and the testimony is to the effect that no warning was given of their presence. In Huntley v. Empire Engineering Co., 211 Fed. 959, 128 C. C. A. 457, this court said:

"The law is quite clear that the respondent is responsible for any damage resulting from its negligence in performing its contract within the state. * * * Therefore the single question is: Did the respondent displace the rock so as to reduce the depth of water in the canal?"

That is the question here and unless the finding that there were such obstructions is clearly against the weight of evidence we should not disturb the findings of the judge upon pure questions of fact.

The accident to the canal boat Collard occurred on August 11, 1911, at about 4 p. m. at a point about halfway between bridges 115 and 116, while she was being towed by three mules. She stranded upon an obstruction in the center of the Erie Canal and was not released until the next afternoon when she proceeded to Rochester, after being pumped out and having some of the damaged grain removed. The stranding of the Collard occurred nearly two months prior to the stranding of the Cumberland but by stipulation the cases were tried together and as the dredging west of bridge 116 was completed before August 11th, it is plain that the large stones in the bed of the Erie Canal, as shown in the photographs, must have been there at that time.

In short, in the Cumberland case the contractors were held liable for obstructing the Erie Canal by large stones rolled up by the dipper dredge used by them and for not maintaining an efficient buoy to warn navigators of their presence. The Cumberland was held in fault for not having seen in time a warning buoy, or if her navigator did see it, for not reducing speed and proceeding with prudence and caution.

In the Collard case the contractors were held liable for the same reason as in the Cumberland case and the Collard was held liable for not exercising care and diligence in delaying and reducing her draft and for not proceeding with the utmost skill and care after she grounded at Hindsburg.

[2] The questions here are mostly questions of fact, the trial judge seeing and hearing the witnesses is in a much better position to reach

a correct conclusion than judges who only read the testimony from a printed book. Especially is this so in a controversy where so many conflicting interests are represented and where there is danger that facts competent upon one issue may influence the disposition of another issue where such facts might not be admissible. However, there are some controlling facts about which there can be no controversy. There were in the vicinity of the place where the Columbia struck four large stones projecting above the bed of the canal from 1 to 1½ feet. The presumption is very strong, as these stones were not there in the spring of 1911, that they were rolled up by the dipper dredge at work in the Barge Canal proper. The photographs taken after the water had been drawn off discloses the dangerous situation, the iron rust marks on some of the stones strongly corroborating the other testimony that they had frequently been in collision with passing boats. Whether there was a buoy at this point at the time of the accident is in dispute but in any view it was, as the court found, inadequate to indicate that the steersman was nearing a bend 120 feet long where there were a number of large stones, some of the witnesses say nine, ten or eleven, projecting up from the bed of the canal; one of them, at least, about 18 inches. What further testimony as to the cause of the injury was needed? Upon what theory can a finding that the Cumberland struck on one of these boulders be disturbed by a reviewing court?

But it is said that there was a keg buoy in the vicinity, about this there is dispute, but, assuming that there was, we think the trial judge was correct in holding that it was an inadequate protection against the rock on which the Cumberland struck. The burden was on the respondents to show that there was a buoy guarding the boulder which caused the disaster—this burden has not been sustained. Again it is argued that the Ludington Company and Beeman are not liable because they were instructed by the state officials in charge of the barge canal construction to have 6 feet of water above all obstructions and that there was in fact 6½ feet above the obstructions at the time in question.

We are of the opinion that this proposition cannot be maintained. If the contention of the respondents be correct that there was 6 feet 7 inches of water over the largest boulder it is improbable that a boat drawing 6 feet could have struck it. We think the fact that these boats struck an obstruction in the prism of the canal is presumptive evidence that there was insufficient water there for safe navigation and that the burden is upon the contractors who placed the obstructions there to show that they were not at fault in doing so. Mr. Ludington testified that Mr. Govern, the division engineer, said regarding the depth of water to be maintained, "Give us at least 6 feet over everything" and it is asserted that this relieves the contractor and subcontractor if it appears that there was 6 feet or more over the boulder in question. We are not at all certain that instructions by the local inspector Abrams and the division engineer Govern, even if they were obeyed, can be regarded as a defense to a contractor who, working on the excavations of the Barge Canal, places dangerous

obstructions in the prisms of the old Erie Canal. But assuming this for the present, it is at least a question whether the instructions were carried out at the date of the injuries. Was there 6 feet of water over the boulder on which the Cumberland struck? It is enough to say that the question is in doubt, the fact of the grounding being against it. Many causes may have operated to reduce the depth of the water at that time. We think that, even if true that there was 6 feet of water over everything, this fact constitutes no defense to the contractors, because Abrams and Govern were not in a position to bind the state of New York by their directions which were directed to and confined by the theater of their work which related only to the cut on the berm bank side and not to the channel of the old Erie Canal. Their business had to do with the new cut and their directions related to that. They were not attempting to lay down rules for the regulation of traffic on the Erie Canal. McDonough, Superintendent of the Western Division of the Erie, says:

"Q. Can you tell us what the rules were? A. I do not know of any set rules, our instructions have been to see that the prism was ready and fit for navigation. Q. About the removal of obstructions from the old canal bottom? A. I have always given my instructions to see that there were no obstructions to the navigation previous to letting in the water. Q. To what depth? A. We try to maintain a depth of 7 feet of water above the miter sills of the locks and all other places."

Had this been done in the present case there would have been no injury to boats or cargo. The boats were in the old canal where, under normal conditions, navigators had a right to assume that the depth of the water was 7 feet. The contractors were operating to widen and deepen the channel so that at some future time the Erie would be enlarged into a barge canal but the work of the contractors had not yet reached the prism of the Erie and had not deepened its channel. One of the contractors operating a dipper dredge had rolled or pushed up a series of large boulders which materially reduced the depth of water over then so that it was impossible to navigate safely at that point with the ordinary draft of from 6 feet 1 to 6 feet 6 inches. Many causes may arise to change the depth of the water and the draft of the boats and it cannot be said that a boat is compelled to cease navigating because conditions change in these particulars. The damage here was produced by the respondents obstructing the Erie Canal by rolling up large boulders into the channel and not giving the libelants' boats timely and sufficient notice of their presence.

The decrees are affirmed with interest and costs.